# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10652

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2019

Lyle W. Cayce
Clerk

ROBERTO SANCHEZ,

       Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

       Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, HIGGINSON, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

A Texas jury took just 24 minutes to convict Roberto Sanchez of murder for chasing down unarmed Sergio Gonzalez and stabbing him in the heart. In this federal habeas action, Sanchez claims his Sixth Amendment right to effective assistance of counsel was violated because his trial attorney failed to object when the prosecution asked a witness whether Sanchez was in the United States legally. (He was not.) Even if the nonobjection constituted ineffective assistance, Sanchez cannot show prejudice—a "reasonable probability" that his trial would've gone better had his lawyer spoken up. Evidence of Sanchez's guilt was overwhelming, to put it mildly, including his bragging "it felt good to kill somebody" immediately after he killed somebody. Sanchez is not entitled to habeas relief, and we AFFIRM.

No. 17-10652

## I.    The Murder, The Trial, The Appeals, and Then Habeas

Ten years ago, Roberto Sanchez went to a Fort Worth nightclub where his two cousins worked. At closing time, one of his cousins told a customer with whom she'd been talking that she was getting a ride with Sanchez. Frustrated, the customer confronted Sanchez and his cousins in the parking lot as they prepared to drive away, banging on their car window. Sanchez got out and drew a knife. The unarmed customer fled. Sanchez chased him, caught him, and stabbed him. According to Sanchez's cousins, he then returned to the car "happy," boasting "it felt good to kill somebody."

Sanchez refused the State's plea deal—25 years—despite knowing that his cousins would testify. At trial, the prosecution had this exchange with one cousin:

> Q. And did you—how old were you when you met Roberto?
> A. Ever since I was a baby. I don't recall since I was a little girl.
> Q. Did you both live in Honduras together?
> A. No. He was living in a little town and I was living in another.
> Q. So you were living in different towns, but they were nearby in Honduras?
> A. Yes, yes.
> Q. And did you come here before or after he did?
> A. I came—I came here first.
> Q. *And are you aware, is Roberto Sanchez here legally or illegally?*
> A. Well, illegal, he doesn't have papers.

Sanchez's lawyer didn't object to this mention of Sanchez's immigration status, and the topic never came up again. After closing arguments, the jury deliberated 24 minutes before convicting Sanchez.

During sentencing deliberations, the jury sent this note: "If [Sanchez] is ever released on parole, will [he] remain in our country, or would he be deported back to Honduras?" The court replied that it was "not able to supply additional information," and the jury sentenced him to 70 years in prison.

2

No. 17-10652

On appeal, Sanchez argued that the trial court should've declared a mistrial when the prosecution asked whether Sanchez was in the country "legally or illegally." The state appellate court disagreed, citing Sanchez's failure to timely object.[1]

After exhausting direct appeals, Sanchez filed a state habeas application asserting, among other things, ineffective assistance of counsel. In an affidavit, Sanchez's trial counsel insisted his nonobjection was strategic—that Sanchez, if he took the stand, would've been "up front and truthful" about his unlawful status in hopes of appearing credible and forthright to the jury. The plan was for Sanchez to admit it "on his own" to bolster his believability, particularly since counsel wanted Sanchez to testify in support of various defenses and also intended to cross-examine the cousins on whether their incriminating testimony was coerced with threats of deportation. The lawyer added that he stood ready to object if the question arose again.

The state trial court denied Sanchez's habeas application, holding there was no deficient performance (counsel's "chosen defense was the result of reasonable trial strategy") and no prejudice (no "reasonable probability that the result of the proceeding would have been different had counsel objected to a single reference to [Sanchez's] illegal status"). On appeal, the Texas Court of Criminal Appeals denied the application without written order.

Sanchez then filed a federal habeas petition, raising the same ineffective-assistance claim. The district court held that Sanchez was not entitled to habeas relief and denied him a certificate of appealability (COA).

In denying relief, the district court determined that the state court reasonably applied the Supreme Court's decision in *Strickland*,[2] noting:

---

[1] *See Sanchez v. State*, 418 S.W.3d 302, 307–08 (Tex. App.—Fort Worth 2013, pet. ref'd).

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

3

- the "overwhelming evidence of [Sanchez's] guilt";

- the prosecution didn't "predicate its trial strategy or shape its closing argument around [his immigration] status";

- Sanchez's immigration status came up only once; and

- the jury note alone is not "clear and convincing evidence of ethnic or racial bias or proof that [Sanchez's] illegal status had a substantial and injurious influence on the jury's verdict in either phase."

Sanchez next sought a COA from this court. Judge Costa granted it, reasoning that trial counsel's purported strategy was questionable, Sanchez's legal status was inadmissible, the state court's no-ineffective-assistance conclusion was doubtful, and its no-sentencing-prejudice conclusion was debatable.[3]

When assessing a denial of habeas relief, we review the district court's findings of fact for clear error and its conclusions of law de novo.[4] And we "may affirm on any ground supported by the record."[5] Whether counsel rendered ineffective assistance is a "mixed question of law and fact."[6]

## II.    Sanchez Is Not Entitled to Habeas Relief

To obtain habeas relief under § 2254, Sanchez must establish that the state court decision rejecting his ineffective-assistance claim "was contrary to" or unreasonably applied "clearly established Federal law, as determined by the Supreme Court."[7] And as the Court stressed in *Harrington v. Richter*, state-

---

[3] *Sanchez v. Davis*, 888 F.3d 746, 751–52 (5th Cir. 2018) (Costa, J., granting certificate of appealability).

[4] *Dorsey v. Stephens*, 720 F.3d 309, 314 (5th Cir. 2013).

[5] *Id.*

[6] *Strickland v. Washington*, 466 U.S. 668, 698 (1984).

[7] 28 U.S.C. § 2254(d)(1).

court merits decisions merit deference.[8] Unless no "fairminded jurist[] could disagree that the state court's decision conflicts with this Court's precedents," the state court's decision must stand.

Here, "the only question that matters"[9] is whether the state court's denial of Sanchez's ineffective-assistance claim flouted or unreasonably applied *Strickland v. Washington*, which declared the standard for such claims.[10] It doesn't matter if *we* think Sanchez makes a strong case. What matters is whether the state court was unreasonable in rejecting it. "It bears repeating," the Court emphasized in *Richter*, "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."[11]

The key inquiry is whether there is any room for principled judicial disagreement? Could any fairminded jurist believe that the state court reasonably applied *Strickland* in rejecting Sanchez's ineffective-assistance claim? If yes, game over. Federal habeas relief is "not a substitute for ordinary error correction through appeal."[12] It's a difficult standard to meet, says the Court—"because it was meant to be."[13]

Under *Strickland*, a convicted defendant must make two showings: (1) that trial counsel's performance "fell below an objective standard of reasonableness;"[14] and (2) "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[8] *Harrington v. Richter*, 562 U.S. 86, 91 (2011) ("[I]t is necessary to reverse the Court of Appeals for failing to accord required deference to the decision of a state court.").

[9] *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)).

[10] 466 U.S. 668 (1984).

[11] *Richter*, 562 U.S. at 102 (citing *Lockyer*, 538 U.S. at 75).

[12] *Id.* at 102–03.

[13] *Id.* at 102.

[14] *Strickland*, 466 U.S. at 687–88.

different."[15] Put more simply, Sanchez must show "both that his counsel provided deficient assistance and that there was prejudice as a result."[16]

But again, this is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was *incorrect*, but whether it was *unreasonable*—whether its decision was "so lacking in justification" as to remove "any possibility for fairminded disagreement."[17] Could earnest judges come to varying conclusions as to whether the state court rightly held that counsel's nonobjection was not ineffective assistance, and, even if it was, that Sanchez suffered no prejudice?

## A.    Whether Trial Counsel Erred Is Disputed But Not Dispositive

In *Strickland*, the Supreme Court remarked that "advocacy is an art and not a science," adding that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[18] In other words, there's a "wide range of professionally competent assistance,"[19] and informed strategy normally cannot constitute "deficient performance."[20] Our review is thus "highly deferential" and must carefully avoid second-guessing and "the distorting effects of hindsight."[21] Actually, our review is "doubly deferential" given that *Strickland* and § 2254(d) "apply in tandem," thus making Sanchez's path "all the more difficult."[22] As the State rightly puts

---

[15] *Id.* at 694.

[16] *Richter*, 562 U.S. at 104.

[17] *Id.* at 103.

[18] *Strickland*, 466 U.S. at 690.

[19]*Id.* at 690.

[20] *Id.* at 687, 689. *But see Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir. 2005) (requiring for deficiency that trial strategy be "so ill chosen that it permeates the entire trial with obvious unfairness").

[21] *Strickland*, 466 U.S. at 689.

[22] *Richter*, 562 U.S. at 105.

it, we defer "both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance."[23]

Sanchez's trial counsel maintains that his decision not to object to the immigration-status testimony was a conscious and informed part of his trial strategy. The state court was persuaded that the nonobjection was indeed strategic. And the State's briefing here ably discusses why not objecting may have been reasonable. For his part, Sanchez forcefully asserts the inadmissibility of immigration-status evidence and insists that allowing such testimony to pass unchallenged reveals an incompetent lawyer, not a strategic one.

Ultimately, we need not tarry on whether Sanchez satisfies *Strickland*'s first prong (performance) because it is plain, given the substantial evidence of his guilt, that he cannot satisfy the second prong (prejudice).

The Supreme Court squarely addressed the sequence in *Strickland*:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.[24]

The Court's commended course makes perfect sense in this case.

## B.   Even if Counsel Blundered, Sanchez Cannot Show Prejudice

The Supreme Court standard on prejudice is sharply defined: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[25] Instead, as the Court clarified in *Richter*,

---

[23] *See Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017).

[24] 466 U.S. at 697.

[25] *Id.* at 693.

No. 17-10652

"The likelihood of a different result must be substantial, not just conceivable."[26] It is not enough to show that the jury *could* have reached a different result. Sanchez must show it was "reasonably likely" they *would* have.[27]

Now layer on top of that the habeas lens of "reasonableness."[28] Because the state court has already adjudicated Sanchez's ineffective-assistance claim on the merits, he must demonstrate that the court's no-prejudice decision is "not only incorrect but 'objectively unreasonable.'"[29] Put differently, Sanchez must show that every reasonable jurist would conclude that, but for the lone immigration-status question, it is reasonably likely that the jury would have either (1) acquitted him, or (2) given him a lighter sentence.

Turning first to the guilt–innocence phase, consider our 2012 holding in *Clark*.[30] There, "the state presented numerous witnesses who testified that [the defendant] had murdered two other people, committed rape and assault, burned a car, and dealt drugs."[31] We considered that evidence "overwhelming," citing another Fifth Circuit case involving a jury trial with 11 witnesses.[32] In both instances, we found it "virtually impossible to establish prejudice."[33]

Here, there were four eyewitnesses to the murder, including, most damning, two of Sanchez's own family members. The prosecution built a convincing case unrelated to Sanchez's illegal status. His cousins testified that he relished murdering Gonzalez, boasting that "it felt good to kill somebody." There was no mitigating evidence. Given the swiftness of the jury's guilty

---

[26] 562 U.S. at 112.

[27] 466 U.S. at 696.

[28] 562 U.S. at 100–01.

[29] *Maldonado v. Thaler*, 625 F.3d 229, 236 (5th Cir. 2010) (quoting *Renico v. Lett*, 599 U.S. 766, 777 (2010).

[30] *Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012).

[31] *Id.* at 414.

[32] *Id.* at 424 (citing *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002)).

[33] *Id.* (quoting *Ladd*, 311 F.3d at 360).

verdict—taking just 24 minutes—it is difficult to imagine a "substantial likelihood" that the outcome would've been different had trial counsel objected to the one fleeting question about Sanchez's unlawful status.

As to the sentencing phase, Sanchez proposes a tenable theory. The jury asked about his immigration status during their sentence deliberations. So it was on the jury's mind. Maybe it was simple curiosity. Maybe it was something more. The Supreme Court has set the prejudice bar high, though—and it has done so purposely. Possibility does not equal "probability," which is what *Strickland* demands—"a probability sufficient to undermine confidence in the outcome."[34] Again, the likelihood of a lighter sentence "must be substantial, not just conceivable."[35] All this shows is that, at most, Sanchez's sentence *might* have been different. Not that it likely *would* have been different.

It's also unclear which direction the jury's note cuts. Sanchez insists that the jury's consideration of his unlawful status necessarily resulted in a lengthy 70-year sentence. But this is "pure speculation,"[36] "mere possibility,"[37] and "nothing more than a theoretical possibility."[38] It is also possible that some jurors may have thought the shorter the sentence, the sooner Sanchez would be deported, and the sooner American taxpayers would stop funding his incarceration. In short, the jury's note provides no basis for concluding that Sanchez's immigration status necessarily resulted in a longer sentence than he would have received otherwise. Evidence of Sanchez's guilt was substantial; the likelihood of a more lenient sentence was not.[39]

---

[34] 466 U.S. at 694.

[35] *Richter*, 562 U.S. at 112.

[36] *Id.* at 100.

[37] *Id.*

[38] *Id.* at 112.

[39] Judge Costa was right to grant Sanchez a COA. The jury note and Texas caselaw recognizing the potentially prejudicial impact of illegal-status testimony raised "a colorable argument that the state court's finding of no prejudice was unreasonable." *Sanchez v. Davis*,

No. 17-10652

Sanchez has not carried his heavy burden of showing that the state court's no-prejudice finding reflects an unreasonable application of *Strickland*.

\* \* \*

Given the overwhelming evidence of Sanchez's guilt, including eyewitness testimony from his own family, we hold that even if his counsel's performance fell short of constitutional standards, Sanchez falls short on prejudice. He cannot show a "reasonable probability" that he would have been acquitted or received a lighter sentence. The district properly declined to issue a writ of habeas corpus, and we AFFIRM.

---

888 F.3d 746, 752 (5th Cir. 2018) (Costa, J., granting certificate of appealability). That was enough for a COA. But the habeas hurdle is far higher. A "colorable argument" no longer suffices. Sanchez must show that *all* fairminded jurists *would* agree there *was* prejudice. The State, by contrast, need only show that *a* fairminded jurist *could* find *no* prejudice.