REVISED SEPTEMBER 10, 2008

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-70024

RICKEY LYNN LEWIS

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:05-CV-70

Before BARKSDALE, GARZA, and BENAVIDES, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Rickey Lynn Lewis appeals the denial, pursuant to the Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA), of his successive-habeas claim,
under Atkins v. Virginia, 536 U.S. 304 (2002) (execution of mentally-retarded
defendant cruel and unusual punishment prohibited by Eighth Amendment).
The issue for which the district court granted a certificate of appealability (COA)
is whether, based on the evidence submitted in the state-court Atkins
proceeding, and pursuant to our deferential review under AEDPA, the following
decision by the Texas Court of Criminal Appeals (TCCA) was unreasonable: that

Lewis failed to establish, by a preponderance of the evidence, that he had significantly subaverage general intellectual functioning. In April 2008, this panel denied Lewis' request to certify other issues for appeal. Lewis v. Quarterman, No. 07-70024, 2008 WL 886123 (5th Cir. 1 Apr. 2008) (unpublished).

Primarily at issue is the district court's refusal to consider an affidavit, first offered in that court, challenging the administration of an IQ test to Lewis. The affidavit was offered in reply to the State's response to Lewis' federal habeas application. VACATED and REMANDED.

I.

In September 1990, during the burglary of a residence, Lewis murdered one person and sexually assaulted that person's fiancée. A state-court jury convicted Lewis in April 1994 of capital murder; he was sentenced to death. Holding the trial court had not applied the recently revised special issues, the Texas Court of Criminal Appeals (TCCA) upheld the conviction but remanded for a new punishment-phase hearing. Lewis v. State, No. 71,887 (Tex. Crim. App. 19 Jun. 1996) (unpublished).

On remand, Lewis was again sentenced to death; the TCCA affirmed. Lewis v. State, No. 71,887 (Tex. Crim. App. 23 Jun. 1999) (unpublished). Lewis did not petition for review by the Supreme Court of the United States.

While his direct appeal was pending, Lewis requested state post-conviction relief. It was denied. Ex parte Lewis, No. 44,725-01 (Tex. Crim. App. 19 Apr. 2000) (unpublished).

Lewis then requested federal habeas relief, which was denied in 2002. Our court affirmed that denial. Lewis v. Cockrell, 58 F. App'x 596 (5th Cir. 2003) (unpublished). The Supreme Court denied review in October 2003. Lewis v. Dretke, 540 U.S. 841 (2003).

Following the 2002 Atkins decision, Lewis filed a successive-habeas application in state court, contending: he is mentally retarded; and thus, in the light of Atkins, he is ineligible for execution. The TCCA, in July 2003, stayed Lewis' scheduled execution and remanded the matter to a state-habeas trial court to consider the Atkins claim. Ex parte Lewis, No. 44,725-02 (Tex. Crim. App. 24 Jul. 2003) (unpublished).

The state-habeas trial court conducted an evidentiary hearing in December 2004. In February 2005, it rendered proposed findings of fact and conclusions of law, and recommended denying relief. The TCCA agreed, based on the state-habeas trial court's findings and conclusions, and on the TCCA's independent review. Ex parte Lewis, No. 44,725-02 (Tex. Crim. App. 29 Jun. 2005) (unpublished).

Between the state-habeas trial court's February 2005 recommendation and the TCCA's denial of relief that June, and concerned about AEDPA's limitations period, our court permitted Lewis to file a successive federal habeas application for his Atkins claim, conditioned on the denial of relief by the TCCA. In re Lewis, No. 05-40484 (5th Cir. 15 Apr. 2005) (unpublished). Lewis filed that application in district court on 20 April 2005. Therefore, when the TCCA denied relief that June, which prompted Lewis' execution being set, the federal district court granted Lewis' unopposed motion to stay execution.

In April 2005, Lewis filed the successive-habeas application at issue. It did not mention Dr. Roid or an affidavit by him (discussed below and primarily at issue here). In February 2006, the State responded, advising there was no exhaustion issue and asking the district court, inter alia, to deny relief. In September 2006, Lewis filed his reply to the State's response. In it, Lewis supplemented his Atkins claim with the affidavit of Dr. Roid, which provides: Dr. Rosin committed nine procedural errors in administering an IQ test to Lewis; and the test Dr. Rosin administered was "invalid". On 8 December 2006,

the State moved to strike that reply, asserting that Dr. Roid's affidavit is a "new, and unexhausted, exhibit[]".

The district court did not rule on the motion to strike. Instead, in June 2007, it ruled, under AEDPA, that the state-court decision was not unreasonable (that Lewis failed to establish he is mentally retarded); all relief was denied. Lewis v. Quarterman, No. 5:05-CV-70 (E.D. Tex. 22 Jun. 2007) (unpublished). In a footnote, citing 28 U.S.C. § 2254(d)(2), the district court ruled it would not consider Dr. Roid's affidavit because it was not presented in the State court proceeding. That cited section provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2) (emphasis added).

That August, the district court granted a COA for whether, based upon the evidence submitted in the state-court proceeding, the following TCCA decision was unreasonable: Lewis failed to establish by a preponderance of the evidence that he had significantly subaverage general intellectual functioning.

Lewis requested a COA from this court on three more issues. Those requests were denied in April 2008. One of those issues was whether the district court should have considered the affidavit of Dr. Roid (new evidence offered in district court), challenging Dr. Rosin's administration of an IQ test. We ruled: the admissibility, vel non, of Dr. Roid's affidavit was an evidentiary issue that did not concern the denial of a constitutional right; and, as such, it was possible evidence to be considered when the merits were addressed for the issue on which the district court granted a COA. Lewis, 2008 WL 886123, at *3.

II.

Pursuant to AEDPA, where a state court has rejected a habeas claim, a federal court may grant relief only where the state-court decision: (1) was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d). The state-habeas court's fact findings are presumed correct; Lewis can rebut the presumption only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

We apply the same § 2254(d) standard of review to the state-court decision as did the district court. Along that line, we review the district court's findings of fact for clear error; its conclusions of law, de novo. E.g., Martinez v. Johnson, 255 F.3d 229, 237 (5th Cir. 2001).

In Atkins, 536 U.S. at 321, the Supreme Court held that the execution of mentally-retarded defendants violates the Eighth Amendment. The Court acknowledged disagreement will often arise "in determining which offenders are in fact retarded" and, therefore, left to the States the task of defining mental retardation and "developing appropriate ways to enforce th[is] constitutional restriction". Id. at 317.

Accordingly, the TCCA has held that petitioners must prove by a preponderance of the evidence that they are mentally retarded, as defined by the American Association of Mental Retardation (AAMR) and Texas Health and Safety Code § 591.003(13). Ex parte Briseno, 135 S.W.3d 1, 7-8, 12 (Tex. Crim. App. 2004). The definition of mental retardation referenced in Atkins and Briseno has three elements: significantly subaverage general intellectual functioning, generally defined as an IQ of about 70 or below; accompanied by related limitations in adaptive functioning; and onset prior to the age of 18. Atkins, 536 U.S. at 308 n.3, 318; Briseno, 135 S.W.3d at 7.

The state-habeas trial court recommended that Lewis failed to prove he is mentally retarded. That court's proposed findings of fact and conclusions of

law, adopted by the TCCA, stated that Lewis failed to prove each of the three elements required for finding mental retardation. With regard to the one element for which COA has been granted (significantly subaverage general intellectual functioning), the state-habeas trial court received evidence placing Lewis' IQ at 59, 70, 75, or 79. The state-habeas trial court sided with the State's experts' higher estimates on the basis that Drs. Rosin and Gripon were more credible, reliable, and unbiased than Drs. Martin and Garnett, Lewis' experts.

The score of 79, the highest of the four scores, was recorded by Dr. Rosin following administration of the Stanford-Binet V IQ test to Lewis on 25 October 2004, fairly close to the evidentiary hearing that December. The score of 75 resulted from Dr. Garnett's (one of Lewis' experts) re-scoring the test administered to Lewis by Dr. Rosin. The score of 70 is a result of Dr. Gripon's assessment, having reviewed all the available evidence and test results but not having administered a test to Lewis. The score of 59 was recorded by Dr. Martin, following administration of the WAIS III IQ test to Lewis on 30 September 2004.

Dr. Rosin's recorded score of 79 resulted from the most recent IQ test administered to Lewis. Obviously, this fact, along with an IQ of about 70 generally being the break point for finding significantly subaverage general intellectual functioning and with the state-habeas court's finding Dr. Rosin more credible than Drs. Martin and Garnett (who recorded scores of 59 and 75, respectively), makes Dr. Rosin's testing particularly important.

The district court found that, because two IQ test scores showed below-average intellectual ability (IQ scores of about 70 or below) and two scores were above that line, the evidence on this point is in balance. The district court concluded: because evidence was even, the state court's adjudication of the subaverage-general-intellectual-functioning element of Lewis' mental-retardation claim was not, pursuant to AEDPA, based upon an unreasonable

determination of the facts in the light of the evidence presented. Because all three elements for mental retardation must be satisfied, the district court ceased its analysis after this first element. In other words, it did not review the state-habeas court's adjudication of the other two elements for a mental-retardation claim.

In district court, as noted supra, Lewis offered new evidence to support his mental-retardation claim. That proposed evidence is the above-referenced affidavit of Dr. Roid, author of the Stanford-Binet IQ test administered to Lewis by Dr. Rosin. Dr. Roid reviewed Dr. Rosin's testimony, notes from, and video recordings of, Dr. Rosin's administration of the IQ test to Lewis, and the test results. The conclusions detailed in Dr. Roid's affidavit were: administration of the test to Lewis was invalid because standardized procedures were not followed, making the use of the published norms questionable; and, the effect of assistance given by Dr. Rosin to Lewis during the IQ test administration would result in an inflated IQ estimate.

As discussed, citing 28 U.S.C. § 2254(d)(2), the district court ruled it would not consider Dr. Roid's affidavit because it was not presented in the State court proceeding. Again, that cited section states habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2) (emphasis added). Our court, however, has held that problems presented by evidence introduced for the first time in federal court in support of a federal habeas application are "more accurately analyzed under the 'exhaustion' rubric of § 2254(b)", not as issues of "'factual development' under § 2254(d)". Dowthitt v. Johnson, 230 F.3d 733, 745 (5th Cir. 2000); see also Morris v. Dretke, 413 F.3d 484, 498 (5th Cir. 2005).

Under § 2254(b), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State". This exhaustion requirement is satisfied if the substance of petitioner's claims have been fairly presented to the state court. Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003). The exhaustion requirement is not satisfied if the petitioner "presents material additional evidentiary support to the federal court that was not presented to the state court". Dowthitt, 230 F.3d at 745 (emphasis in original). Evidence is material if it fundamentally alters, not merely supplements, the claim presented in state court. Anderson, 338 F.3d at 386-87.

"The exhaustion-of-state-remedies doctrine, . . . codified in the [pre-AEDPA] federal habeas statute . . . reflects a policy of federal-state comity, an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (citations, internal quotation marks, and footnote omitted). The exhaustion rubric, discussed supra, ensures the habeas petitioner has fairly presented the substance of his federal claim to the state courts. This comports with "AEDPA's purpose to further the principles of comity, finality, and federalism". Williams v. Taylor, 529 U.S. 420, 436 (2000). Once the federal claim has been fairly presented to the state courts, and the exhaustion requirement has been satisfied, a federal court reviewing a habeas application may be confident adequate measures have been taken to "prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution'". Picard, 404 U.S. at 275-76 (quoting Ex parte Royall, 117 U.S. 241, 251 (1886)).

Therefore, if new evidence is determined to be exhausted (because it merely supplements the claim first presented in state court), it may be

considered by the federal court. Morris, 413 F.3d at 498; Dowthitt, 230 F.3d at 745-46. Lewis offers Dr. Roid's affidavit to support his claim that Dr. Rosin did not follow the IQ test protocols when administering the test to Lewis. As further discussed below, this is not material additional evidence, because it supplements, rather than fundamentally alters, the claim presented in state court.

For example, Dowthitt held that petitioner exhausted his ineffective-assistance-of-counsel mental-illness claim when he had presented detailed assertions of his paranoid schizophrenia to the state courts, and offered additional affidavits by mental-health experts on that same diagnosis in federal court that were not previously presented to the state courts. Dowthitt, 230 F.3d at 745-46. The same is true here.

In state court, Lewis presented claims of mental retardation, relying upon affidavits and testimony by health professionals. His claim is exhausted, notwithstanding his presenting in federal court for the first time an affidavit by a mental-health expert (the creator of the IQ test administered by Dr. Rosin) opining on that same diagnosis.

The claim that Dr. Rosin improperly administered the IQ test was fully addressed in state court. The state-habeas trial court noted in its proposed findings of fact that Dr. Rosin testified at the state-habeas Atkins evidentiary hearing that she did not follow all the instructions for application of the IQ test. Dr. Garnett, one of Lewis' experts, testified at that hearing that the IQ score of 79 on the test given by Dr. Rosin has low validity because of the overt mistakes made in scoring the test.

Dr. Roid's affidavit supplements that testimony by Dr. Garnett. Accordingly, as stated, the exhaustion requirement, with regard to Dr. Roid's

affidavit, has been met. See Morris, 413 F.3d at 498; Dowthitt, 230 F.3d at 745-46.[*]

Because the district court was not prohibited from considering Dr. Roid's affidavit, we vacate and remand for further proceedings, as may be appropriate, so that, inter alia: the State may respond to Dr. Roid's affidavit; the district court will have an opportunity to consider the affidavit and the State's response; and, the state court's adjudication of the subaverage-general-intellectual-functioning element of Lewis' mental-retardation claim may be re-evaluated, under AEDPA, in the light of this new evidence. Obviously, if the district court concludes, in the light of this new evidence, that the state court's adjudication of that element of Lewis' mental-retardation claim was based upon an unreasonable determination of the facts in the light of all the evidence, the district court should then consider one or both of the other two elements, as required, of Lewis' mental-retardation claim. Atkins, 536 U.S. at 308 n.3, 318; Briseno, 135 S.W.3d at 7.

III.

---

[*] The State seems to suggest another basis for not considering Dr. Roid's affidavit: its not being attached to Lewis' federal habeas application. As noted, Dr. Roid's affidavit was first proffered in Lewis' reply to the Director's response to Lewis' habeas application. (The Director's response discussed an IQ score of 79 reported by Dr. Rosin following her testing of Lewis, the validity of which Dr. Roid's affidavit directly challenged.) The State responded to that affidavit by filing a motion to strike, claiming, inter alia, that Lewis improperly provided "newly created, and unexhausted, affidavit testimony from Dr. Gale Roid". As discussed supra, the district court did not rule on the State's motion to strike, instead holding in its 22 June 2007 opinion denying habeas relief that such new evidence could not be considered.

In our court, the State does not urge this as a basis to exclude Dr. Roid's affidavit, presenting only this footnote on the point: "The Director notes that Lewis did not even submit this affidavit with his original federal petition; rather, it was attached to his reply to the Director's response". The timing in district court of Dr. Roid's affidavit does not alone preclude its being considered by the district court, especially in the absence of any argument here to the contrary. Moreover, this was not the reason given by the district court for not considering it. Instead, as discussed, the court ruled it would not consider it because it had not been presented in state court.

For the foregoing reasons, the denial of habeas relief is VACATED and this matter is REMANDED to district court for further proceedings consistent with this opinion.

VACATED and REMANDED.