# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70005

WALTER ALEXANDER SORTO,

Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-613

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:*

This is an appeal of the district court's denial of habeas relief in the case of Walter Alexander Sorto, who was convicted of capital murder and sentenced to death in Texas in 2003.

Sorto first argues the district court abused its discretion in denying requests for funding that would have enabled him to hire an expert to determine whether he has an intellectual disability. He asserts that these

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70005

funds were necessary in order to develop his claim under *Atkins v. Virginia*, 536 U.S. 304 (2002). A certificate of appealability ("COA") is not required for Sorto to appeal the district court's denial of funds. *Woodward v. Epps*, 580 F.3d 318, 333 n.8 (5th Cir. 2009). In connection with this issue, Sorto may file a supplemental brief discussing whether 28 U.S.C. § 2254(b)(1)(B)(ii) applies in the present case. The supplemental brief may be filed with this Court no later than thirty days after the date of this order and should address only matters that have not already been briefed. If Sorto files a supplemental brief, Appellee may file a response no later than twenty days thereafter, also limited to matters that have not already been briefed.

In addition, Sorto requests COAs with respect to claims that (1) he was subjected to custodial interrogation prior to being warned of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and (2) his trial counsel provided ineffective assistance by failing to develop and present certain mitigation evidence. For the following reasons, we DENY COAs with respect to Sorto's *Miranda* and ineffective assistance of counsel ("IAC") claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2002, the police found two deceased women in a vehicle in an industrial area of Houston, Texas. The police identified the women as Maria Rangel and Roxana Capulin, both of whom had been missing since leaving their jobs at a restaurant the previous night. Rangel had been shot twice in the head, and Capulin had died from a single gunshot wound. Both bore signs of sexual trauma.

### A.    Police Interviews

At approximately 7:45 p.m. on August 20, 2002, Harris County Sheriff's Deputy Miguel Gonzalez and Detective Alejandro Ortiz met Sorto and a confidential informant in a hotel room. Sorto told the officers that although he was not a participant in the offense, he had seen Edgardo Cubas and Eduardo

2

No. 16-70005

Navarro abduct Rangel and Capulin and had followed them to a remote location. Sorto claimed he left the scene of the crime when he heard gunshots.

Considering Sorto a witness to the crime, Detective Ortiz asked him to continue the interview at the Harris County Sheriff's homicide office. The police and Sorto traveled to the police station in separate vehicles. During a videotaped interview that commenced at 9:52 p.m., Sorto initially repeated the story he had told the officers at the hotel. At 10:48 p.m., Detective Ortiz asked Sorto to provide a saliva sample to the police. Sorto was "kind of stunned" by the request and asked: "What is this exam? Is it pretty good, 100 percent or what?" According to Detective Ortiz, after providing the saliva sample, Sorto began to change his story. Sorto said that after Cubas had shot the two women, Cubas forced Sorto to return to the scene and have sexual intercourse with Rangel's corpse.

Around 11:21 p.m., the police read Sorto his *Miranda* warnings in Spanish, although they still did not consider him to be in custody. During a series of interrogations that occurred over the next few hours, Sorto admitted to committing several crimes, many of which involved Cubas. At 1:10 a.m., after learning that Sorto had an outstanding arrest warrant, Detective Ortiz formally took Sorto into custody. In an interview beginning around 8:25 a.m. the following morning, Sorto gave the police a third version of the events—he admitted that he had participated in sexually assaulting Rangel but maintained he was not involved in the women's murders.

**B.    Trial**

The State of Texas charged Sorto with capital murder for intentionally and knowingly killing Rangel and Capulin during the same criminal transaction. The State also notified Sorto that it intended to seek the death penalty.

3

No. 16-70005

Sorto's trial counsel moved to suppress Sorto's statements to police, arguing that he was in custody long before the police read him the *Miranda* warnings. The defense also contended that, even after the *Miranda* warnings were read, Sorto did not understand the constitutional rights he had waived. After a lengthy hearing, the trial court refused to suppress Sorto's statements to police.

During the trial that followed, the jury instructions provided that Sorto could be convicted if: (1) he actually shot the victims; (2) he was a party to the offense; or (3) he conspired to kill the victims. The State supported its argument that Sorto was a party to or conspirator in the murders by pointing to an earlier crime, in which fifteen-year-old Esmeralda Alvarado had been raped and murdered. DNA evidence linked Sorto and Cubas to Alvarado's rape, and Sorto had confessed to involvement in the rape, though he maintained that Cubas was the shooter. The State argued that Sorto knew Cubas would kill Rangel and Capulin after the sexual assaults because Cubas had previously killed Alvarado. The jury found Sorto guilty of capital murder.

After a Texas jury has convicted a capital defendant, the appropriate sentence is determined pursuant to state law through answers to special issue questions that are presented to the jury. In this case, the trial court instructed the jury to decide whether (1) Sorto would be a future danger to society, (2) Sorto caused the two killings or anticipated that a human life would be taken, and (3) sufficient circumstances mitigated against the imposition of a death sentence. Both parties presented extensive evidence during the sentencing phase. Ultimately, the jury answered the special issues in a manner that required imposition of a death sentence.

## C.    **Direct Appeal and Habeas Proceedings**

Sorto raised sixteen claims on automatic direct appeal. The Texas Court of Criminal Appeals ("TCCA") affirmed Sorto's conviction and sentence. *Sorto*

4

*v. Texas*, 173 S.W.3d 469, 471 (Tex. Crim. App. 2005). In 2005, during the pendency of his direct appeal, Sorto also filed a state habeas application pursuant to Article 11.071 of the Texas Code of Criminal Procedure, raising fifteen claims, including an IAC claim under *Wiggins v. Smith*, 539 U.S. 510 (2003). The TCCA dismissed the 2005 state habeas application, adopting the trial judge's findings and conclusions and denying habeas relief. *Ex parte Sorto*, No. WR-71,381-01, 2009 WL 483147, at \*1 (Tex. Crim. App. Feb. 25, 2009) (per curiam).

Sorto then brought the present case seeking a writ of habeas corpus in federal district court. On July 12, 2010, the district court issued an order staying the case and directing Sorto to present an unexhausted *Atkins* claim in state court.

Accordingly, Sorto filed a state habeas application with the TCCA on November 8, 2010, arguing that he should be granted relief under *Atkins*. Sorto also asserted an expanded IAC claim under *Wiggins* and supplied the TCCA with additional evidence in support of that claim. On April 20, 2011, the TCCA issued a short order dismissing Sorto's 2010 state habeas application pursuant to Article 11.071, Section 5(a). *Ex parte Sorto*, No. WR-71381-03, 2011 WL 1533377, at \*1 (Tex. Crim. App. Apr. 20, 2011) (per curiam). Section 5(a) states that if a prisoner files a subsequent habeas application after filing an initial application, Texas courts will not consider the merits or grant relief unless the subsequent application contains sufficient specific facts establishing that one of three narrow exceptions applies. Tex. Code Crim. Proc. art. 11.071, § 5(a).[1] Examining Sorto's *Wiggins* claim under the relevant exception, the court

---

[1] In relevant part, Section 5(a) states the application must contain "sufficient specific facts establishing that . . . (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial." Tex. Code Crim. Proc. art. 11.071, § 5(a).

concluded that "the application does not contain sufficient specific facts establishing that but for a violation of the United States Constitution, no rational juror would have answered one or more of the special issues in the State's favor." *Ex parte Sorto*, 2011 WL 1533377, at *1.

The case then returned to the federal district court. On September 30, 2015, the district court issued a memorandum and order denying habeas relief on all claims and declining to issue a COA. Sorto subsequently filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), which the district court denied. Sorto now appeals.

## II. STANDARD OF REVIEW

Sorto may only appeal the district court's denials of habeas relief with respect to his *Miranda* and IAC claims if this Court grants COAs for those claims. 28 U.S.C. § 2253(c)(1). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). For claims denied on the merits, a defendant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). For claims denied on procedural grounds, the defendant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 478.

When a defendant seeks a COA on a claim that was adjudicated in state court, the claim must be reviewed in light of 28 U.S.C. § 2254(d). *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that

state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (per curiam) (quoting *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (per curiam)). Thus, when § 2254(d) applies, a federal court may not grant habeas relief unless the state-court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III. DISCUSSION

### A. Custody During the 9:52 p.m. Interview

During the state court proceedings, Sorto claimed that the state trial court should have suppressed statements he made before the police warned him of his constitutional rights under *Miranda* at 11:21 p.m. He contended that he was subjected to custodial interrogation prior to receiving that warning. On appeal, this Court must determine whether reasonable jurists would debate whether the state court's holding that Sorto was not in custody was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. *See* 28 U.S.C. § 2254(d).

In *Miranda*, the Supreme Court explained that "custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. According to case law elaborating on *Miranda*, "'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). "Two discrete inquiries are essential to the determination [of whether a defendant was in custody]: first, what were the circumstances surrounding the interrogation; and second, given those

No. 16-70005

circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (footnote omitted). A court should consider the totality of the circumstances, including (1) "the length of the questioning"; (2) "the location of the questioning"; (3) "the accusatory, or non-accusatory, nature of the questioning"; (4) "the amount of restraint on the individual's physical movement"; and (5) "statements made by officers regarding the individual's freedom to move or leave." *United States v. Wright*, 777 F.3d 769, 774–75 (5th Cir. 2015) (cataloguing relevant cases).

In light of the facts presented, it does not appear that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004). In *Alvarado*, the Supreme Court suggested that the facts that the interview was conducted at the police station, the interview lasted for two hours, and Alvarado was not told he was free to leave all weighed in favor of the view that Alvarado was in custody. *Id.* at 665. However, given that Alvarado arrived at the station voluntarily, the officers did not threaten him or suggest he would be placed under arrest, and the officers twice asked Alvarado if he wanted to take a break, the Supreme Court ultimately concluded that the state court had not unreasonably applied the custody standard. *Id.* at 664–65.

Similarly, in the instant case, Sorto notes that the interview lasted over an hour before he was read his rights; it was conducted at a police station; and at least after the oral swab was taken, the officers considered him a suspect. However, during the suppression hearing in state court, the government presented evidence suggesting that Sorto came to the homicide office on his own and without pressure; the police never handcuffed Sorto throughout the interviews that night or the following morning; Detective Ortiz never told Sorto he could not leave; and the officers never locked the door to the interview room.

8

These facts suggest that Sorto made his statements voluntarily and in a noncoercive atmosphere. Because there was evidence suggesting Sorto was not in custody, we hold that reasonable jurists would agree that the state court did not unreasonably apply the Supreme Court's custody standard. *See Id.* at 664–65. Accordingly, we deny a COA with respect to Sorto's *Miranda* claim.

## B.     Ineffective Assistance on the Mitigation Special Issue

Sorto also argues that he should be granted a COA for his claim that his trial attorneys provided ineffective assistance under *Wiggins* and *Strickland v. Washington*, 466 U.S. 668 (1984). He claims that his trial counsel inadequately defended against a death sentence by failing to subpoena witnesses who were key to the mitigation special issue. Sorto suggests that testimony from these witnesses "very well could have influenced the jurors to answer the mitigation special issue differently and sentence Sorto to life in prison rather than to death."

In the proceedings below, the district court held that "[b]ecause the state courts procedurally barred Sorto's attempt to expand his *Strickland* claim in the 2010 state habeas application, the only claims properly before the Court are the claims and evidence Sorto submitted in the 2005 state habeas application." However, in the interests of justice, the district court considered the evidence presented in both the 2005 and 2010 applications. The district court held that, regardless of which application was reviewed, it was reasonable for the state court to conclude that counsel did not provide ineffective assistance. On appeal, Sorto contends that (1) the district court erred in concluding his 2010 IAC claim was procedurally barred and (2) it was unreasonable to conclude that counsel's assistance was sufficient under *Wiggins* and *Strickland*.

### 1. *Procedural Bar*

"If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). This Court has held that Article 11.071, Section 5(a) of the Texas Code of Criminal Procedure constitutes an independent and adequate state procedural ground for dismissal in the IAC context; therefore, an IAC claim is procedurally defaulted if the TCCA dismisses it under Section 5(a). *Barrientes v. Johnson*, 221 F.3d 741, 758–59 & n.10 (5th Cir. 2000); *Nobles*, 127 F.3d at 422–23; *Emery v. Johnson*, 139 F.3d 191, 195–96 (5th Cir. 1997).

The TCCA clearly and expressly based its dismissal of Sorto's 2010 IAC claim on Section 5(a). *Ex parte Sorto*, 2011 WL 1533377, at *1. Contrary to Sorto's contentions on appeal, the TCCA's specific reference to the relevant exception in Section 5(a) did not make the language of the order ambiguous—rather, it made clear that Sorto had failed to make the requisite showing under that exception. *See id.* (holding that "the application does not contain sufficient specific facts establishing that but for a violation of the United States Constitution, no rational juror would have answered one or more of the special issues in the State's favor"). Accordingly, we hold that reasonable jurists would agree that the district court was correct in concluding that the IAC evidence raised in Sorto's 2010 state habeas application was procedurally barred and thus that the district court could only consider the evidence raised in Sorto's 2005 state habeas application.

Sorto also argues that his 2010 IAC claim is procedurally viable under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), because his state habeas counsel in 2005 was ineffective. "A prisoner

may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Martinez*, 132 S. Ct. at 1316. In *Martinez*, the U.S. Supreme Court held that the ineffectiveness of a prisoner's postconviction attorney in the initial state habeas proceeding can be used to establish cause for a procedural default. *Id.* at 1320; *see also Trevino*, 133 S. Ct. at 1921 (applying *Martinez* to Texas's habeas framework). To meet this exception to the procedural default rule, however, the prisoner must show that (1) his postconviction attorney in the initial state habeas proceeding was "ineffective under the standards of *Strickland*" and (2) "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Here, the district court considered the evidence presented in Sorto's 2010 state habeas application and concluded that the additional evidence did not establish that Sorto's IAC claim had merit. As discussed below, the district court's assessment of the merits of the 2010 expanded IAC claim was correct. Therefore, we hold that reasonable jurists would agree with the district court's conclusion that Sorto has not shown the underlying IAC claim is substantial and therefore has not shown cause for the procedural default.

### 2. *Sufficiency of Counsel's Assistance*

Generally, to prove an IAC claim, the defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. With respect deficient performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689–90. With respect to prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694. In federal habeas proceedings, our review of an IAC claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The state court's decision will be upheld if the state court had a reasonable basis for concluding that counsel satisfied *Strickland*'s deferential standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

### a. 2005 state habeas application

In his 2005 state habeas application, Sorto alleged that his trial counsel was ineffective for failing to adequately investigate and present evidence of post-traumatic stress disorder ("PTSD") and exposure to hazardous chemicals. Sorto provided only an affidavit from himself in support of his IAC claim. In response, Sorto's trial counsel filed affidavits describing their efforts to develop evidence of Sorto's PTSD and chemical exposure and explaining why they chose not to raise these issues during the sentencing phase.

The state habeas court found that Sorto had failed "to demonstrate that witnesses or evidence were available to support [his] claims regarding PTSD and/or hazardous chemical exposure." In addition, the state court found that "the defense team conducted extensive research and investigation regarding . . . chemical exposure," including reviewing documents, consulting with people who knew Sorto, consulting with a university chemistry department, conducting a brain scan that revealed no evidence of organic disruption, and consulting with a psychiatrist. Considering the trial attorneys' efforts, the evidence they collected, and the lack of evidence Sorto supplied in support of his IAC claim, the state court concluded that "trial counsels' investigation of [Sorto's] potential mitigating evidence was objectively reasonable and consistent with a coherent trial strategy."

In reviewing the state court's decision, the district court aptly noted that "this is not a case where trial counsel 'failed to pursue known leads' or 'ignored . . . useful information.'" *See Skinner v. Quarterman*, 576 F.3d 214,

220 (5th Cir. 2009). On the contrary, there is extensive evidence that trial counsel sought to develop defenses based on PTSD and chemical exposure but ultimately concluded there was insufficient evidence to support these defenses. Accordingly, we hold that reasonable jurists would agree that the state court had a reasonable basis for concluding that trial counsel's assistance was sufficient under *Wiggins* and *Strickland*.

### b. 2010 state habeas application

In his 2010 state habeas application, Sorto claimed his attorneys should have conducted a broader investigation into his background that would have revealed a "wealth of mitigating evidence," including his PTSD, exposure to warfare, exposure to hazardous chemicals, intellectual disability, extreme poverty and malnutrition, forced child labor, and beatings and severe punishment. In support, Sorto provided affidavits from eight witnesses who were willing to testify in his 2003 trial. Although the TCCA did not reach the merits of Sorto's 2010 claim, s*ee Ex parte Sorto*, 2011 WL 1533377, at *1, during the federal habeas proceedings, the district court reviewed Sorto's expanded IAC claim de novo and concluded Sorto had failed to show deficient performance and prejudice.

This Court "must be particularly wary of arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence?" *Skinner*, 576 F.3d at 220 (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000)). When the unpresented evidence is not "shocking and starkly different than that presented at trial," this Court has held that the IAC claim is not viable. *Blanton v. Quarterman*, 543 F.3d 230, 239–40 n.1 (5th Cir. 2008); *Coble v. Quarterman*, 496 F.3d 430, 437 (5th Cir. 2007) (holding that the state court's decision was not unreasonable where much of the evidence defendant argued should have been developed more effectively was nonetheless presented at trial).

No. 16-70005

Here, it appears that the evidence presented at trial was not starkly different from the evidence Sorto contends should have been presented. Sorto's trial counsel called six witnesses who testified on his behalf during the punishment phase. Four family members testified regarding his childhood, including his exposure to the Salvadoran civil war, poverty and malnutrition, beatings and severe punishment, abandonment by his mother, poor academic record, and work fumigating crops. In addition, a forensic psychiatrist testified about Sorto's background, including the beatings and sexual abuse Sorto experienced as a child, and discussed Sorto's risk for future dangerousness. The evidence presented at trial touched on the same issues Sorto raised in his 2010 state habeas application, albeit not to the degree Sorto contends was warranted. Thus, it seems that Sorto's 2010 IAC claim did not make a sufficient showing of deficient performance.

In assessing prejudice, a court must "evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—in reweighing it against the evidence in aggravation." *Williams v. Taylor*, 529 U.S. 362, 397–98 (2000). The district court noted that the evidence suggested Sorto had engaged in a pattern of escalating offenses "from violent robberies, to the rape and murder of one woman, to the rape and murder of two women." Given the severity of the offense and Sorto's apparent pattern of criminal activity, we hold that reasonable jurists would agree Sorto has not shown any reasonable probability that the additional mitigating evidence would have swayed the jury to impose a lesser sentence. Thus, we deny a COA with respect to Sorto's IAC claims.

## IV. CONCLUSION

For the foregoing reasons, we DENY COAs with respect to Sorto's *Miranda* and IAC claims. In connection with his *Atkins* claim, supplemental

14

No. 16-70005

briefing will be permitted on the question of whether 28 U.S.C. § 2254(b)(1)(B)(ii) applies in the present case.