# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70005

WALTER ALEXANDER SORTO,

Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

June 15, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

On December 1, 2016, this Court issued a nondispositive opinion denying certificates of appealability ("COAs") with respect to Petitioner–Appellant Walter Alexander Sorto's *Miranda* and ineffective assistance of counsel claims. *Sorto v. Davis*, 672 F. App'x 342 (5th Cir. 2016) (per curiam). The opinion reserved judgment on the issue of whether the district court abused its discretion in denying requests for funding that would have enabled Sorto to obtain testing to determine whether he has an intellectual disability.[1] *Id.* at

---

[1] A COA is not required for Sorto to appeal the district court's denials of funding. *Ayestas v. Stephens*, 817 F.3d 888, 895 (5th Cir. 2016) (per curiam), *cert. granted in part sub*

No. 16-70005

344. In connection with this issue, the opinion requested supplemental briefing discussing whether 28 U.S.C. § 2254(b)(1)(B)(ii) applies in the present case. *Id.* Section 2254(b)(1)(B)(ii) excuses the requirement that a petitioner exhaust state habeas remedies when the available state process is ineffective to protect the petitioner's rights. Supplemental briefs were submitted by Sorto and Respondent–Appellee Lorie Davis, the director of the Texas Department of Criminal Justice, Correctional Institutions Division (the "Director"). We now hold that Texas's corrective process did not effectively protect Sorto's rights under *Atkins v. Virginia,* 536 U.S. 304 (2002). Therefore, we VACATE the district court's denial of funding and dismissal of Sorto's *Atkins* claim and REMAND for further proceedings.

## I. BACKGROUND

In 2003, Sorto was convicted of capital murder and sentenced to death in Texas. During the pendency of his direct appeal, Sorto raised fifteen claims in a state habeas application filed pursuant to Article 11.071 of the Texas Code of Criminal Procedure. Sorto subsequently filed a pro se "Motion to Amend Petition for State Habeas Corpus 11.071," alleging that intellectual disability barred his execution under *Atkins.* The Texas Court of Criminal Appeals (the "TCCA") addressed both filings in a single order. *Ex parte Sorto*, No. WR-71,381-01, 2009 WL 483147, at *1 (Tex. Crim. App. Feb. 25, 2009) (per curiam). With regard to the 2005 state habeas application, the TCCA adopted the trial judge's findings and conclusions and denied habeas relief. *Id.* In addition, the TCCA held that Sorto's 2006 pro se motion was a subsequent application and

---

*nom. Ayestas v. Davis*, No. 16-6795, 2017 WL 1199473 (U.S. Apr. 3, 2017); *Woodward v. Epps*, 580 F.3d 318, 333 n.8 (5th Cir. 2009). Instead, this Court must simply determine whether the district court abused its discretion in denying the requested funds. *Brown v. Stephens*, 762 F.3d 454, 459 (5th Cir. 2014).

dismissed it as an "abuse of the writ" after concluding that it "fail[ed] to meet any of the exceptions provided for in Article 11.071, § 5."[2] *Id.*

Sorto then brought the present case seeking a writ of habeas corpus in federal district court. In December 2009, and again in February 2010, Sorto's counsel asked the district court to authorize funding for psychological testing so that Sorto could develop his *Atkins* claim. On May 5, 2010, the district court issued an order denying the requested funds and explaining that "Sorto has not shown that he has any reasonable likelihood of meeting the high standards necessary to both overcome the procedural default and state a valid claim of mental retardation." Accordingly, the district court concluded that the "requested funding [was] not reasonably necessary." The district court then issued an order staying the case and ordering Sorto to present his unexhausted *Atkins* claim in state court.

On November 8, 2010, Sorto filed a subsequent habeas application with the TCCA, arguing, among other things, that he should be granted relief under *Atkins*. In support of his *Atkins* claim, Sorto presented an IQ score of 66 on the Test of Nonverbal Intelligence ("TONI"), which he claimed placed him "well within the range of significantly subaverage intellectual functioning." Sorto also submitted several affidavits from people who had known him since childhood; these affidavits suggested that his intelligence was impaired as a child and that he had difficulty functioning competently as an adult. Finally, Sorto presented a declaration from Dr. Gilbert Martinez, a clinical psychologist, who reviewed the TONI results and the affidavits. Dr. Martinez

---

[2] Article 11.071, Section 5(a) of the Texas Code of Criminal Procedure provides that if a prisoner files a subsequent habeas application after his initial habeas application, Texas courts "may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts" establishing that one of three narrow exceptions applies.

gave his "professional opinion that Mr. Sorto's history contains significant indications of intellectual and adaptive deficits beginning in the developmental period prior to age 18." Although the declaration acknowledged that a "complete evaluation" was needed "to make an appropriate diagnosis," Dr. Martinez stated that Sorto's "test scores suggest the presence of intellectual deficits" and that "individuals who have known Mr. Sorto from childhood have provided a view of his life of seriously impaired functioning in a broad spectrum of daily living requirements."

A few months later, the TCCA issued a short order dismissing Sorto's 2010 state habeas application. *Ex parte Sorto*, No. WR-71381-03, 2011 WL 1533377, at *1 (Tex. Crim. App. Apr. 20, 2011) (per curiam). With respect to Sorto's *Atkins* claim, the court held that Sorto had "failed to make a threshold presentation of evidence that, if true, is sufficient to show that no rational factfinder would fail to find that he is mentally retarded." *Id.*

The case then returned to the federal district court. In October 2013, the district court granted funds for psychological testing. Sorto used the funds to hire Dr. Martinez, who administered several tests, including the Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III"), and reviewed various affidavits by family members describing Sorto's history and development. The testing showed that Sorto had a full-scale IQ score of 63, a score within the "Extremely Low" range of intellectual functioning. In addition, Dr. Martinez observed that "[t]here is information in Mr. Sorto's reported history that is also suggestive of deficits in adaptive functioning throughout his development, including very poor academic functioning, speech and language deficits, procedural learning deficits, and social behavior deficits." Dr. Martinez concluded that Sorto's "overall pattern of cognitive and intellectual functioning is strongly indicative of intellectual disability." Dr. Martinez noted, however,

4

that a "comprehensive adaptive functioning assessment is strongly recommended to confirm this diagnosis of intellectual disability."

Sorto subsequently filed a motion specifically requesting funds to complete the assessment Dr. Martinez recommended. On September 30, 2015, the district court issued a memorandum and order denying Sorto's request for additional funding and denying habeas relief on all claims. The district court noted that it could only review the record that was presented to the state court and thus was constrained "from considering the results of Dr. Martinez's testing," even though those results constituted "compelling" evidence of intellectual disability. With respect to the denial of additional funding, the district court explained, "Sorto has not provided any substantive basis to suppose that additional testing would provide any basis to allow federal review of his *Atkins* claim. Testing is not reasonably necessary when it will only support a claim for which federal review is unavailable." The district court also rejected Sorto's claim that the state court process "was clearly ineffective at safeguarding [his] rights" and thus held that Sorto was not entitled to relief under 28 U.S.C. § 2254(b)(1)(B)(ii). According to the district court, "Sorto's failure to put forth evidence sufficiently calling into doubt his intellectual ability, not the state court's failure to authorize the expenditure of funds, foreclosed state habeas review." Sorto timely appealed.

## II. DISCUSSION

Under 28 U.S.C. § 2254(b)(1), a writ of habeas corpus cannot be granted unless "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Sorto argues that because Texas law only allows him to receive state funds to develop his *Atkins* claim if he has already made a threshold showing of intellectual disability—a showing that is nearly

impossible to make without funding for IQ testing—the state corrective process is ineffective to protect his rights. Therefore, he contends that the exhaustion requirement should have been excused under § 2254(b)(1)(B)(ii). In response, the Director argues that § 2254(b)(1)(B)(ii) cannot apply because Sorto has already exhausted his *Atkins* claim and that the state corrective process is not so clearly ineffective as to trigger § 2254(b)(1)(B)(ii).

The § 2254(b)(1)(B)(ii) issue is tied to the question of whether the district court abused its discretion in denying Sorto's requests for federal funds to develop his *Atkins* claim. "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Ayestas*, 817 F.3d at 895 (quoting *United States v. Ebron*, 683 F.3d 105, 153 (5th Cir. 2012)). Pursuant to 18 U.S.C. § 3599(f), a district court may order that a defendant receive funding for "investigative, expert or other services" if the court finds that such services "are reasonably necessary for the representation of the defendant." In both 2010 and 2015, the district court determined that the requested federal funding was not reasonably necessary because Sorto's *Atkins* claim was not fully exhausted and any additional evidence obtained would be unexhausted and therefore unreviewable. However, if the exhaustion requirement should have been excused under § 2254(b)(1)(B)(ii) due to inadequacies in the state corrective process, then the district court could have reviewed the additional evidence that Sorto would have obtained using the funding. In that case, the district court's denial of funding was based on an erroneous view of the law and thus constituted abuse of discretion.

## A.    Sorto's *Atkins* Claim Is Unexhausted

Sorto argues that "[b]ecause it is supported by the WAIS-[III] evaluation performed by Dr. Martinez in 2014, the claim that Sorto presented the court below is significantly stronger and should be considered a different claim from

the one he presented to the state court." Thus, he contends that his *Atkins* claim is unexhausted. The Director argues that "Sorto *did* exhaust state remedies, presenting an *Atkins* claim that was rejected on the merits," and that the additional testing Sorto obtained in 2014 "does not fundamentally alter the existing claim and render it unexhausted."

In *Lewis v. Quarterman*, we held that "[t]he exhaustion requirement is not satisfied if the petitioner 'presents *material* additional evidentiary support in the federal court that was not presented to the state court.'" 541 F.3d 280, 284 (5th Cir. 2008) (quoting *Dowthitt v. Johnson*, 230 F.3d 733, 745 (5th Cir. 2000)). This doctrine was based on the premise that "problems presented by evidence introduced for the first time in federal court in support of a federal habeas application are more accurately analyzed under the exhaustion rubric of § 2254(b), not as issues of factual development under § 2254(d)." *Id.* (internal quotation marks omitted) (quoting *Dowthitt*, 230 F.3d at 745). However, in *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court changed the way federal courts approach evidence introduced for the first time in federal habeas petitions. The Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 181. Accordingly, the Director argues that "after *Pinholster*, federal courts no longer examine new evidence under the exhaustion rubric."

In *Ibarra v. Thaler*, we noted that additional evidence the petitioner "offered to bolster his *Atkins* claim in federal court, which included an admissible affidavit of his psychologist in addition to numerous other affidavits, was essential to his claim of mental retardation." 691 F.3d 677, 682 (5th Cir. 2012), *vacated in part on other grounds on reh'g sub nom. Ibarra v. Stephens*, 723 F.3d 599 (5th Cir. 2013). But our opinion went on to explain that "[b]y disallowing federal courts (with few exceptions) from considering additional evidence not developed in the state court record, [*Pinholster*]

7

necessarily rules out the use of such proffered evidence to flesh out claims inadequately presented to the state courts." *Id.* Therefore, we concluded that the district court "properly disregarded this newly proffered evidence." *Id.* Similarly, in *Clark v. Thaler*, this Court explained, "In light of the teachings in *Pinholster*, we are not tasked with determining whether all of the new evidence that Clark presented to the federal district court was exhausted." 673 F.3d 410, 417 (5th Cir. 2012). Instead, we "consider[ed] only the record that was before the state habeas court." *Id.*

Yet in both *Ibarra* and *Clark*, the petitioners argued that the evidence presented to the federal courts *was* exhausted because the evidence merely supplemented the claims they had raised in state court; thus, they argued that the federal courts should review their additional evidence under § 2254(d). *Ibarra*, 691 F.3d at 682; *Clark*, 673 F.3d at 417. By contrast, Sorto has argued that the evidence he presented for the first time in the district court rendered his claim *unexhausted*. This approach is consistent with Fifth Circuit precedent. In at least one unpublished case issued after *Pinholster*, we held that a petitioner's claims "fit into the class of cases in which new evidence renders a petitioner's claims unexhausted." *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013). The opinion explained:

> [W]e have consistently refused to consider a habeas petitioner's claims exhausted where the petitioner provides substantial amounts of new evidence, the claims and allegations before the state court were conclusory and undeveloped, the petitioner offers new evidence that could not have been derived from the state court record, and the petitioner offers new evidence which alters the nature of his claims.

*Id.* at 491. Thus, the doctrine discussed in *Lewis*—that new evidence sometimes renders a claim unexhausted—remains in effect after *Pinholster*.

Under that doctrine, a claim is only rendered unexhausted if the new evidence offered for the first time in the district court is "material." *See Lewis*,

541 F.3d at 284–85. "Evidence is material if it *fundamentally alters, not merely supplements*, the claim presented in state court." *Id.* Therefore, we must ask whether Sorto's *Atkins* claim is "in a significantly different and stronger evidentiary posture than it was before the state courts." *Dowthitt*, 230 F.3d at 746 (quoting *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986)).

To assess the evidentiary posture of Sorto's claim, it is necessary to examine the requirements the state imposes on habeas applicants.[3] Texas law dictates that a "state habeas applicant who alleges that he is mentally retarded in an *initial* post-conviction writ application must prove it by a preponderance of the evidence in order to obtain relief on his claim." *Ex parte Blue*, 230 S.W.3d 151, 162 (Tex. Crim. App. 2007) (emphasis added). However, the Texas legislature has determined "that the State's interest in the finality of its judgments justifies the imposition of higher burdens upon the subsequent applicant who did not avail himself of the opportunity and resources available to him at trial or in an initial writ." *Id.*

Thus, when an applicant raises an *Atkins* claim for the first time in a subsequent habeas application, the TCCA will only review the claim on the merits if the applicant first makes "a *threshold* showing of evidence that would be at least *sufficient* to support an ultimate conclusion, by clear and convincing evidence, that no rational factfinder would fail to find mental retardation."[4] *Id.* at 163. This does not mean that the subsequent application must "actually

---

[3] As the Supreme Court recently noted, "States have some flexibility, but not 'unfettered discretion,' in enforcing *Atkins*' holding." *Moore v. Texas*, 137 S. Ct. 1039, 1052–53 (2017).

[4] Although not directly applicable here, it is worth noting that a "subsequent state habeas applicant . . . who filed an initial writ application before *Atkins*, and thus could not have been expected to raise it initially," is required to make a slightly less stringent "*prima facie* showing of mental retardation in his subsequent pleading, and then, if granted leave to proceed by this Court, must establish in the subsequent proceedings that he is mentally retarded by a preponderance of the evidence." *Ex parte Blue*, 230 S.W.3d at 162.

*convince*" the TCCA that the applicant has an intellectual disability, but the applicant must show "more than that the evidence preponderates in favor of a finding" that he is intellectually disabled. *Id.* Specifically, the petitioner must "make a threshold presentation of evidence that, if true, would be *sufficient* to show by clear and convincing evidence" that the petitioner has "1) significant sub-average general intellectual functioning, usually evidenced by an IQ score below 70, that is accompanied by, 2) related limitations in adaptive functioning, 3) the onset of which occurs prior to the age of 18." *Id.*

We have noted that "under Texas law, the lack of a full-scale IQ score of 75 or lower is fatal to an *Atkins* claim." *Blue v. Thaler*, 665 F.3d 647, 658 (5th Cir. 2011) (citing *Ex parte Hearn*, 310 S.W.3d 424 (Tex. Crim. App. 2010)). Indeed, it seems the TCCA will not consider an *Atkins* claim on the merits if a subsequent habeas application does not include a full-scale IQ score.[5] *See id.* at 657–59; *Ex parte Blue*, 230 S.W.3d at 166. In *Blue*, an expert for the defense administered "short-form versions of the verbal portions of the Wechsler test and concluded that Blue 'ha[d] an actual IQ in the range of 75 to 80.'" 665 F.3d at 659. Because Blue had not received a satisfactorily low full-scale IQ score, we held that the IQ evidence in his subsequent habeas application was "insufficient to support Blue's *Atkins* claim" and that the TCCA's determination that he had "not made out a prima facie claim of mental retardation [was] objectively reasonable." *Id.* at 659–61.

---

[5] Texas law on this point may be inconsistent with Supreme Court precedent. The Supreme Court recently "invalidated Florida's strict IQ cutoff because the cutoff took 'an IQ score as final and conclusive evidence of a defendant's intellectual capacity, when experts in the field would consider other evidence.'" *Moore*, 137 S. Ct. at 1050 (quoting *Hall v. Florida*, 134 S. Ct. 1986, 1995 (2014)). Likewise, if experts would consider other evidence of intellectual disability in the absence of a full-scale IQ score, then it may be improper for Texas courts to treat the lack of a full-scale IQ score as final and conclusive.

In the instant case, Sorto's 2010 state habeas application stated that he had received an IQ score of 66 on the TONI. Nevertheless, as the district court noted, the TONI is "a screening tool used to arrive at a rough estimate of the subject's intellectual ability." The mere fact that Sorto did not present a *full-scale* IQ score to the TCCA appears to have been fatal to his state habeas application. *See id.* at 658. After Sorto returned to federal court, however, Dr. Martinez's evaluation produced a full-scale IQ score of 63, a score that appears to adequately evince significant subaverage general intellectual functioning under Texas law. *See Ex parte Blue*, 230 S.W.3d at 163. Dr. Martinez also concluded that Sorto's "overall pattern of cognitive and intellectual functioning is strongly indicative of intellectual disability." This evidence places Sorto's claim in a significantly different and stronger evidentiary posture than the claim presented before the state court, thus fundamentally altering—and not merely supplementing—his claim. Accordingly, we hold that the new evidence rendered Sorto's *Atkins* claim unexhausted.

## B.    Texas's Corrective Process Is Ineffective

Section 2254(b)(1)(B)(ii) states that exhaustion is not required if "circumstances exist that render [the available state corrective] process ineffective to protect the rights of the applicant." The Director contends that this exception only applies "if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). Sorto responds that "it cannot be the case . . . that the exception to the exhaustion doctrine codified in section 2254(b)(1)(B)(ii) is limited to *Serrano* futility." Instead, he contends that "[i]n addition to instances in which the state court process is illusory or futile, the exception to the exhaustion doctrine codified in 28 U.S.C. § 2254(b)(1)(B)(ii) is applicable when the state court process is inadequate."

No. 16-70005

In *Serrano*, the Supreme Court specifically referenced § 2254(b) before describing the futility exception, *see* 454 U.S. at 3, which could suggest that the Supreme Court interpreted the statute's exceptions to the exhaustion requirement as applying only in cases where resort to state court process would be futile. On the other hand, a year later, the Supreme Court stated that "the exhaustion doctrine does not bar relief where the state remedies are inadequate or fail to 'afford a full and fair adjudication of the federal contentions raised.'" *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982) (quoting *Ex parte Hawk*, 321 U.S. 114, 118 (1944)). This suggests that § 2254(b)(1)(B)(ii) is satisfied if the state fails to afford a petitioner a full and fair adjudication of his federal constitutional claims.

Sorto argues that he "lost the opportunity to have his meritorious claim heard [in state court] simply because Counsel could not personally bear the cost of expert assistance." Texas law does not provide "for investigative or expert funding . . . for the preparation of subsequent writ applications, as it does for preparation of an initial writ application." *Ex parte Blue*, 230 S.W.3d at 167. As a result, the TCCA has essentially admitted that Texas law does not always afford full and fair adjudication to applicants who raise *Atkins* claims in subsequent habeas applications:

> An attorney who is appointed for the first time to prepare a federal habeas corpus petition and in the course of his investigation develops a good faith suspicion that his client may be mentally retarded will indeed find himself in a dilemma if the initial state habeas attorney has not raised the issue, and the record does not already contain (as it almost invariably will not) evidence sufficient to satisfy the clear and convincing burden imposed by [Texas law]. . . .
>
> This means that *pro bono* subsequent writ counsel is put in the unfortunate position of having to choose whether to personally bear the costs of expert and investigative assistance, raise the costs himself from private charitable sources, file a writ application

12

without such assistance that will almost surely fall short of the
statutory burden, or file no writ application at all despite his good
faith suspicions.

*Id.* at 167. Though acknowledging this unfortunate dilemma, the TCCA explained that this "is the hurdle the Legislature has deemed appropriate for the subsequent applicant who has, for whatever reason, bypassed his opportunity to avail himself of the resources to which he would have been entitled had he raised the issue in an initial writ application." *Id.*

But federal constitutional rights are not subject to the whims of state legislatures. "[A]t the very core of exhaustion doctrine is the requirement that state procedures be adequate and effective, for it is only because these procedures are adequate to vindicate federal constitutional rights that the forbearance of the federal courts from swift consideration of habeas corpus claims is justified." *Carter v. Estelle*, 677 F.2d 427, 445 (5th Cir. 1982).

Texas procedures did not afford Sorto an adequate opportunity to vindicate his federal constitutional rights. In 2006, Sorto attempted to raise his *Atkins* claim through a pro se motion to amend his initial state habeas application "because Appointed Counsel refuse[d] to help file this claim on the habeas corpus writ." Nevertheless, because Sorto's pro se motion to amend was filed after his initial habeas application, the TCCA treated the motion as a subsequent habeas application and summarily dismissed it as an abuse of the writ. *Ex parte Sorto*, 2009 WL 483147, at *1. When Sorto later raised a more substantial *Atkins* claim in his 2010 state habeas application, Texas law prevented the state courts from granting funding to enable Sorto to obtain full-scale IQ testing, even though the TCCA has acknowledged that an *Atkins* claim "will almost surely fall short of the statutory burden" "without such assistance." *See Ex parte Blue*, 230 S.W.3d at 167. The TCCA then dismissed this subsequent *Atkins* claim without fully reviewing it on the merits,

apparently because Sorto was unable to supply a full-scale IQ score. *See Ex parte Sorto*, 2011 WL 1533377, at \*1; *see also Blue*, 665 F.3d at 658. In this way, the state denied Sorto the resources necessary to obtain full-scale IQ testing and then refused to review his claim on the merits because he had not obtained a full-scale IQ score. This does not constitute a full and fair adjudication of Sorto's *Atkins* claim. *Cf. Griffin v. Illinois*, 351 U.S. 12, 19 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.").

Accordingly, we hold that the state corrective process was ineffective to protect Sorto's rights and that the district court should have excused exhaustion under § 2254(b)(1)(B)(ii). To be clear, we do not hold that Texas's process of reviewing *Atkins* claims is ineffective in all instances but instead hold that the process was ineffective in the specific circumstances of this case, where Sorto was required to demonstrate he had a full-scale IQ score below a certain mark without being given any resources to obtain IQ testing. Because the district court could have reviewed Sorto's *Atkins* claim in its entirety, including any unexhausted evidence, the district court erred in concluding that the funding would only support a claim for which federal review was unavailable. Thus, the district court based its denial of funding on an erroneous view of the law and thereby abused its discretion.

### III. CONCLUSION

For the reasons discussed above, we VACATE the district court's denial of funding, and we REMAND the case for further proceedings consistent with this opinion. On remand, the district court should reassess whether funding is reasonably necessary in light of our holding that the exhaustion requirement must be excused. In addition, we VACATE the dismissal of Sorto's *Atkins* claim so that the district court can reevaluate the claim taking into account the

No. 16-70005

excusal of the exhaustion requirement and any additional evidence Sorto may present if further funding is granted.